# UNITED STATES DISTRICT COURT

for the

Southern District of California

FILED

AUG 0 2 2017

CLERK, U. S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) )  Case No. |
| Alcatel One Touch Cellular Telephone Serial #: DALK4103 | ) ) )  **17 MJ 2664** |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A (incorporated herein by reference).

located in the _____**Southern**_____ District of _____**California**_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B (incorporated herein by reference).

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 U.S.C. § 1324(a)(1)(A)(ii) | Transportation of Certain Aliens |
| United States Code § 371 | Conspiracy |

The application is based on these facts:

See Attached Affidavit of BPA Carlos B. Fregoso.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Carlos B. Fregoso, Border Patrol Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 8/2/17

_____
*Judge's signature*

City and state: San Diego, California

Hon. Mitchell D. Dembin, U.S. Magistrate Judge
*Printed name and title*

1
2

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

3
4

IN THE MATTER OF THE SEARCH
OF:

Case No:

5
6
7
8

Alcatel One Touch Cellular Telephone
SKU Number:  DALK4103
IMEI number:  014671002493247

AFFIDAVIT IN SUPPORT OF AN
APPLICATION FOR A SEARCH
WARRANT

9

## **AFFIDAVIT**

10

I, Carlos B. Fregoso, being duly sworn, declare and state:

11

## **INTRODUCTION**

12

1.     This affidavit is made in support of an application to search the following

13

cellular telephone:

14

Alcatel One Touch Cellular Telephone ("Target Telephone 2")[1]
Serial Number:   DALK4103
IMEI Number:    014671002493247

15
16
17

as described in Attachment A, and seize evidence of crimes, specifically, Title 18,

18

United States Code § 371, Conspiracy, and Title 8, United States Code §

19

1324(a)(1)(A)(ii), Transportation of Certain Aliens.

20

2.     Target Telephone 2 was seized from Roberto RAMOS-Rodriguez at the

21

time of his arrest on July 3, 2017.

22

3.     Target Telephone 2 is currently in the possession of the Department of

23

Homeland Security ("DHS"), Customs and Border Protection ("CBP"), United States

24

Border Patrol ("USBP") at the El Cajon Border Patrol Station, located in Santee,

25

California.

26
27

[1] See separate cover for an application regarding Target Telephone 1.

28

4.     Based on the information below, there is probable cause to believe that a search of Target Telephone 2 will produce evidence of the aforementioned crimes, as described in Attachment B.

5.     In preparing this affidavit, I have conferred with other agents and law enforcement personnel who are experienced in the area of alien smuggling, and the opinions stated below are shared by them. Further, I have personal knowledge of the following facts, or have had them related to me by persons mentioned in this affidavit. Because this affidavit is made for the limited purpose of obtaining a search warrant for Target Telephone 2, it does not contain all of the information known by me or other federal agents regarding this investigation, but only contains those facts believed to be necessary to establish probable cause.

## EXPERIENCE AND TRAINING

6.     I am a Border Patrol Agent with the Department of Homeland Security, Customs and Border Protection, United States Border Patrol ("USBP"). I have been employed as a full-time, sworn federal agent with the USBP since August 23, 2010, having graduated from the USBP Basic Border Patrol Training Academy located in Artesia, New Mexico. The academy curriculum covers specialized training in the Immigration and Naturalization Act, criminal law, and statutory authority, as well as cross-training in Title 21 United States Code, and cross-training in Title 19 United States Code, Customs law violations.

7.     As a BPA, I am a Federal Law Enforcement Officer within the meaning of Rule 41(b) of the Federal Rules of Criminal Procedure, that is, a government agent engaged in the enforcement of the criminal laws of the United States, and thereby authorized to request issuance of federal search and seizure warrants. As a BPA, my responsibilities include the investigation of possible violations of Immigration and

Nationality laws (Title 8, United States Code), including alien smuggling in violation of Title 8, United States Code, Section 1324, and related offenses.

8.    I am currently assigned to the El Cajon Station Abatement Team ( "SAT").    SAT is tasked with the responsibility of investigating, arresting, and prosecuting alien smuggling organizations that utilize the Southern and Central Districts of California as an operational corridor.    SAT is also tasked with investigating narcotics smuggling, bulk cash smuggling, and a variety of other federal and state offenses.    SAT agents deploy in plain clothes attire and drive unmarked government vehicles.

9.    During the course of my employment with USBP, I have participated in investigations that have resulted in criminal prosecutions.    I have also participated in alien smuggling investigations that have resulted in federal and criminal charges. Additionally, I have made arrests and prepared reports in federal proceedings. Through my training and experience, I have gained a working knowledge and insight into the typical workings of criminal organizations.    I have also gained extensive information as to the normal operational habits of persons who make their living as alien and narcotics smugglers.    Through my training and experience, I have become familiar with the behavior, speech, routes, and methods of operations of criminal organizations, to avoid detection and apprehension by law enforcement officers.

10.    In preparing this affidavit, I have conferred with other agents and law enforcement personnel who are experienced in the area of alien smuggling investigations, and the opinions stated below are shared by them.    Further, I have personal knowledge of the following facts, or have had them related to me by persons mentioned in this affidavit.

**FACTS SUPPORTING PROBABLE CAUSE**

11.    On July 3, 2017, at approximately 7:18 a.m., the El Cajon Border Patrol Station Intelligence Team ("ECJ SIT") received an alert that a vehicle ECJ SIT had

been monitoring via a federal vehicle tracking device was driving southbound on Interstate 5. The vehicle, a 2010 Gray Dodge Charger bearing California license plate 6PKM885 ("the vehicle"), was believed to be headed to the San Diego east county area to pick up illegal aliens. The federal tracker warrant (17-1509M) was signed and approved by U.S. Magistrate Jean Rosenbluth on June 14, 2017.    The vehicle is registered to a known alien smuggler Roberto RAMOS previously identified by ECJ SIT.

13.    As the vehicle traveled to the east county area, agents were in an observation post at an area known as Bell Valley. At approximately 7:00 a.m., agents observed several individuals staging in Mexico just south of the international boundary fence on the east side of Bell Valley.

15.    ECJ SIT continued to monitor the vehicle's movements, which continued to drive to the east county San Diego area. Simultaneously, agents in Bell Valley continued to monitor the group that was assembling just south of the border. Shortly thereafter, the group began to cross illegally into the United States and make their way through the Bell Valley area towards State Route ("SR") 94. The group hid in the surrounding brush located just south of SR 94. Agents continued to relay his observations to field agents and ECJ SIT.

16.    As ECJ SIT continued to monitor the Dodge Charger's movements, the driver changed his direction of travel multiple times on SR 94 near the Bell Valley entrance in what ECJ SIT believed was a maneuver to determine if law enforcement was monitoring him.

17.    At approximately 9:25 a.m., additional Border Patrol Agents ("additional agents") advised via service radio that he had visual of the suspected illegal aliens from an area known to agents as "Ed's Scope Site".    Additional agents observed that three of the four suspected illegal aliens were approaching a fence near the Bell Valley entrance and SR 94.[2] At approximately 9:30 a.m., additional agents observed that the

vehicle was approaching the Bell Valley entrance. At approximately 9:35 a.m., additional agents observed three individuals run out of the brush and enter the vehicle. Additional agents saw the vehicle driving east on SR 94 towards Campo, California.

18.    At approximately 9:40 a.m., ECJ SIT observed the vehicle pass their location on SR 94. ECJ SIT agents immediately drove onto SR 94 and started to follow the vehicle. ECJ SIT agents conducted a vehicle stop of the vehicle. ECJ SIT agents approached the vehicle and conducted an immigration inspection. The driver of the vehicle, later identified as Roberto RAMOS, stated that he a citizen and national of Mexico; however, he is a Lawfully Admitted Permanent Resident. The three passengers in the vehicle, later identified as Oscar HERRERA-Cordova, Daniel HERRERA-Cordoba and Israel HERRERA-Cordoba, stated that they are citizens and nationals of Mexico. The three undocumented aliens said they did not possess any immigration documents that would allow them to enter and remain in the U.S. legally. At approximately 9:45 a.m., ECJ SIT agents arrested the driver, Roberto RAMOS, Oscar HERRERA-Cordova, Daniel HERRERA-Cordoba and Israel HERRERA-Cordoba. All subjects were transported to the Forrest Gate Processing Center in Campo, California.

19.    Immediately following RAMOS' arrest, agents searched the vehicle and found Target Telephone 2 in the cup holder, with easy access to the driver.

20.    Based upon my experience and investigation of this case, I believe that RAMOS and other persons, were involved in an on-going conspiracy to smuggle aliens. More specifically, I believe there was an existing conspiracy between RAMOS and Cesar Martinez-Salas, the foot guide who brought three undocumented aliens into the United States. Based on my experience investigating alien smugglers, I also believe that RAMOS may have used Target Telephone 2 to coordinate with co-

---

[2] The fourth individual was later identified as Cesar Martinez-Salas, and is charged as the foot guide in 17-mj-2216.

conspirators regarding the smuggling of illegal aliens, and to otherwise further this conspiracy both inside and outside the United States.

21.     In my experience, alien smuggling conspiracies require detailed and intricate planning to successfully bring in and transport the illegal aliens, all while avoiding detection. I also know that recent calls made and received, telephone numbers, contact names, electronic mail (e-mail) addresses, appointment dates, text messages, pictures and other digital information are usually stored in the memory of cellular telephones like Target Telephone 2. Consequently, Target Telephone 2 may identify other persons involved in alien smuggling activities. Accordingly, based upon my experience and training, consultation with other law enforcement officers experienced in alien smuggling investigations, and all the facts and opinions set forth in this affidavit, I believe that persons involved in alien smuggling conspiracies use telephones and any included stored data for communications, records, or data including but not limited to emails, text messages, photographs, audio files, videos, or location data. Given this, I request permission to search Target Telephone 2 for evidence dating back to June 3, 2017, up to and including through July 3, 2017.

## SEARCH METHODOLOGY

22.     It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device.  Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing.  An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device.  For that reason, the device may only be

powered in a secure environment or, if possible, started in "flight mode" which disables access to the network.  Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device.  Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software.  Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired.  For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography.  This process is time and labor intensive and may take weeks or longer.

23.    Following the issuance of this warrant, I will collect Target Telephone 2 and subject them to analysis. All forensic analysis of the data contained within the telephones and the memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

24.    Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## CONCLUSION

25.    Based on all of the facts and circumstances described above, there is probable cause to conclude that RAMOS used Target Telephone 2 to facilitate the offenses of Conspiracy and Transporting Certain Aliens.  In this case, RAMOS picked up aliens in a rural area in close proximity to the United States/Mexico border.  I believe that the Target Telephone was used to communicate with smugglers on the

1    south side to assist in navigating, to the location where the aliens were picked up.

2    Target Telephone 2 was likely used to facilitate the offense by transmitting and storing

3    data, which constitutes evidence of violations of Title 18, United States Code § 371,

4    Conspiracy, and Title 8, United States Code § 1324(a)(1)(A)(ii), Transporting Certain

5    Aliens.

6         26.    Because the phones were seized at the time of the offense, there is

7    probable cause to believe that evidence of illegal activity committed by RAMOS

8    continues to exist on Target Telephone 2.

9         27.    WHEREFORE, I request that the court issue a warrant authorizing USBP

10   Agents and/or other federal and state law enforcement officers to search the items

11   described in Attachment A, and the seizure of items listed in Attachment B, using the

12   methodology described above.

13   I swear the foregoing is true and correct to the best of my knowledge and belief.

14

15                              Carlos B. Fregoso

16                              Border Patrol Agent

17                              Customs and Border Protection

18

19   Subscribed and sworn to before me this   2   day of August, 2017.

20

21

22   Hon. Mitchell D. Dembin

23   United States Magistrate Judge

24

25

26

27

28

## ATTACHMENT A-2

Cellular phone to be searched:

> Alcatel One Touch Cellular Telephone ("Target Telephone 2")
> Serial Number:   DALK4103
> IMEI Number:   014671002493247

Currently in the possession of the Department of Homeland Security, Customs and Border Protection, United States Border Patrol, El Cajon Border Patrol Station 8404 North Magnolia Avenue, Suite I, Santee, California, 92071 located in locked evidence vault at El Cajon Border Patrol Station.

## ATTACHMENT B-2

The following evidence to be searched for and seized pertains to violations of 18 U.S.C. § 371 (Conspiracy), and Title 8, United States Code § 1324(a)(1)(A)(ii), (Transportation of Certain Aliens).

1.  Communications, records, or data including but not limited to emails, text messages, photographs, audio files, videos, or location data, for the period of June 3, 2017 up to, and including, July 3, 2017:

    a.  tending to indicate efforts to smuggle illegal aliens into the United States from Mexico;

    b.  tending to identify other facilities, storage devices, or services–such as email addresses, IP addresses, phone numbers–that may contain electronic evidence tending to indicate efforts to transport illegal aliens in the United States;

    c.  tending to identify co-conspirators, criminal associates, or others involved in efforts to transport illegal aliens in the United States;

    d.  tending to identify travel to or presence at locations involved in efforts to transport illegal aliens through the United States;

    e.  tending to identify the user of, or persons with control over or access to, Target Telephone; or

    f.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data above.

**which are evidence of violations of Title 8, United States Code, Section 1324.**

The seizure and search of the cellular phone(s) shall follow the procedures outlined in the supporting affidavit. Deleted data, remnant data, slack space, and temporary and permanent files on the cellular phone(s) may be searched for the evidence above.